J. A26001/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF H.D.V., | : | IN THE SUPERIOR COURT OF |
| A MINOR | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.M.R., MOTHER, | : | No. 720 MDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered March 23, 2015,
in the Court of Common Pleas of Cumberland County
Orphans' Court Division at No. 67 ADOPT 2014

BEFORE: FORD ELLIOTT, P.J.E., WECHT AND PLATT,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED OCTOBER 05, 2015**

T.M.R. ("Mother") appeals from the order granting the petition filed by T.A.H., her great aunt ("Aunt"), which sought to involuntarily terminate Mother's parental rights to her 14-year-old daughter, H.D.V. ("Child"), pursuant to Section 2511(a)(1), (2) and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2) and (b). We affirm.

The relevant facts and procedural history of this case are as follows. Child has lived with Aunt since 2004. (Notes of testimony, 11/14/14 at 6.) A custody order was entered on November 18, 2004, establishing primary physical custody with Aunt. (*Id.*) Mother and C.M.V. ("Father")[1] agreed to this order; the order did not provide a set schedule of visitation and/or

---

* Senior Judge assigned to the Superior Court.

[1] Father has filed a separate appeal at No. 778 MDA 2015 from the trial court's order terminating his parental rights.

partial custody for the parents. Mother and Father never married; however, they were in a 12-year relationship and are the parents of two other children, ages 7 and 8, who reside with Mother. (Notes of testimony, 3/12/15 at 32-33.) Mother has maintained some form of contact with Child; such as, texting, and seeing her at family dinners and holidays.

After ending her relationship with Father, Mother married T.R. (Notes of testimony, 11/14/14 at 44-45.) At the time of the November 14, 2014 hearing in this matter, Mother, T.R., and her other two minor children were homeless and living in a shelter called Carlisle CARES. (*Id.* at 44.) Mother testified she has two jobs. She is employed by Med Staffers; she goes into homes to provide home health care. (*Id.* at 79.) She has been employed in this capacity for a little over a year. (*Id.*) Mother has had a second job for two months. (*Id.*) Mother stated she is employed through EMS and cleans at Amazon.[2] (*Id.*)

According to Aunt, Mother has never provided financial support or taken an active role in Child's life. (*Id.* at 11, 13.) Aunt pays for Child's private school tuition as well as health insurance. (*Id.*) Aunt takes Child to doctors' appointments. (*Id.*) Even though Aunt has taken on the role of Mother for Child, Aunt has asked Mother to become more involved in Child's life, but Mother has chosen not to. During the summer of 2014, Aunt applied for a passport for Child. During that process, Aunt had to contact

---

[2] No details were provided regarding EMS or Amazon.

Mother and Father and ask for their cooperation. The parents ultimately complied. However, after Aunt realized she had to "go through hoops" to get the passport, she decided "it was time" that she adopted Child. (*Id.* at 22.)

Aunt filed petitions to involuntarily terminate Mother and Father's parental rights on August 7, 2014. Hearings were held on November 14, 2014, and March 12, 2015. The trial court entered an opinion and order dated March 23, 2015, terminating the parents' rights. Mother filed a timely notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a Rule 1925(a) opinion on May 27, 2015.

On appeal, Mother raises the following questions for our review:

1.  Was the trial court's decision to terminate the parental rights of Mother due to failure to perform parental duties under section 2511(a)(1) supported by sufficient evidence where, Mother took actions to maintain contact with the child, and perform parental duties, and her attempts to maintain contact and perform her duties were denied by the Petitioner?

2.  Did the trial court make the necessary determination that the termination of parental rights would serve the best interests of the child, taking into primary consideration the developmental, physical and emotional needs and welfare of the child?

3.  Was the trial court's decision to terminate the parental rights of Mother supported by clear and convincing evidence where there was no

consideration of child's developmental, physical and emotional needs and welfare, the parents did not cause the child to be without essential parental care, control or subsistence, and the incapacity of Mother to remedy the situation was caused by environmental factors beyond her control?

Mother's brief at 4.

We will address Mother's issues together as they are interrelated. Basically, Mother asserts the trial court's decision to terminate her parental rights under Section 2511(a)(1) and (b) was not supported by sufficient evidence. We review Mother's appeal in accordance with the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*[] As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*[] Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As [the Pennsylvania Supreme Court] discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the

fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. [*Id.*] Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (some citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009). "The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted).

Here, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(1) and (b). We will focus on those subsections.

Section 2511 provides, in relevant part, as follows:

### § 2511. Grounds for involuntary termination

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . . .

**(b)** **Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

We have explained this court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to Section 2511(a)(1) as follows:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

. . . .

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (citations omitted).

Under Section 2511(b), we must inquire whether the termination of Mother's parental rights would best serve the developmental, physical, and emotional needs and welfare of Child. *See In re C.M.S.*, 884 A.2d 1284, 1286-1287 (Pa.Super. 2005), *appeal denied*, *sub nom. C.M.S. v. D.E.H., Jr.*, 897 A.2d 1183 (Pa. 2006); *see also In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (stating that "the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship."). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d at 1287 (citation omitted). We must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.*

The focus in terminating parental rights under Section 2511(a) is on the parent, but it is on the child pursuant to Section 2511(b). *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa.Super. 2008) (*en banc*). "In

cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa.Super. 2008).

Instantly, regarding the considerations set forth in Section 2511(a)(1), the trial court found that while the parents may not have evidenced a "settled purpose" of relinquishing their claim, it is "manifest" that Mother and Father failed to perform parental duties for longer than the six months prior to the filing of the petition. (Trial court opinion, 3/23/15 at 2.) The trial court stated as follows:

> There is no dispute that [Aunt] has cared for [Child] for at least the past eleven years. Nor, is there any question that the child desires to be adopted by [Aunt]. The initial custody arrangement was pursuant to an agreement between the parties, and neither parent has ever taken formal action to assume a greater role in their daughter's life. In fact, they have not only acceded to the order, they have abdicated all responsibility. The fact that [Aunt] is a relative and that she has clearly been better able to care for [Child] does not alleviate their obligation to perform basic parental duties.

*Id.* at 1.

Mother contends that while her efforts to maintain contact with Child "were not Herculean," she argues her personal situation should be taken into account. (Mother's brief at 10.) It was undisputed that Mother has struggled throughout her adult life. Mother lost her home two years ago and was still living in a shelter. (*Id.* at 69.) Mother admitted she had credit

problems. (*Id.*) Mother also has had problems maintaining an automobile. (*Id.* at 14, 67.) Mother's financial plight along with Father's physical condition[3] were documented and may have prevented them from providing a home for Child. However, these conditions do not excuse their utter failure to perform any parental duties or show Child even the most basic parental love and emotional support. Other than attending family gatherings on the holidays and the occasional Christmas play at Child's school, Mother has done nothing to show any type of parental involvement in Child's life.

We believe the following exchange between Aunt's counsel and Mother is telling:

> Q. How much of a priority have you made it to have a strong relationship with [Child] and be involved in her life?
>
> [Mother:] I make it a point to text her a couple of times each month. I make it a point to -- I might not make it a point to call, but she's flat out told me that she prefers to text.

Notes of testimony, 11/14/14 at 70.

This court has emphasized that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." ***In re B.,N.M.***, 856 A.2d 847, 855 (Pa.Super. 2004), ***appeal denied***, 872 A.2d 1200 (Pa. 2005). We have explained:

> [T]his court has held that the parental obligation is a positive duty which requires affirmative performance.

---

[3] Father has spina bifida and is confined to a wheelchair.

> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*Id.* (internal citations omitted).

Mother attempts to blame Aunt for not facilitating more contact between her and Child. (Mother's brief at 10.) Initially, we note Mother failed to seek legal help to secure visitation or a partial custody schedule if that is what she desired. At no time over the course of the last ten years did Mother seek assistance from the court system.

The record shows Aunt facilitated the parents' involvement in Child's life by accommodating Father's disability with her handicap-accessible vehicle, welcoming Mother and Child's two siblings into her home for meals and housing, and providing financial assistance to Mother throughout

- 10 -

Mother's economic setbacks. (Notes of testimony, 11/14/14 at 19-20, 62; 3/12/15 at 65.) Evidently, Mother was content with this arrangement until Aunt filed the petition for termination of parental rights.

Our review of the record supports the trial court's determination that Mother has failed to perform parental duties for the past 11 years and has abdicated her responsibility to act as a parent to Child. In determining that Aunt had sustained her burden under Section 2511(a)(1), we discern no error of law or abuse of discretion by the trial court.

Next, we turn our attention to Section 2511(b) to determine if the trial court properly found that termination was in the best interest of Child. With respect to Section 2511(b), this court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. *In In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super.2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010).

- 11 -

When Mother was asked to describe her bond with Child, she replied, "I realize it could be better, but I do enjoy speaking with her. [Child] is very -- she's a very intelligent young lady." (Notes of testimony, 11/14/14 at 76.)

In its analysis of Section 2511(b), the trial court explained:

> Although the words "best interests of the child" were not found in our brief opinion and order, let there be no doubt that we found the termination to serve just that purpose. Indeed, to force a 14 year old to remain legally tethered against her strongest desires to parents with whom she shares only a biological connection would be a disservice to her and to the law. [Child]'s sole parental bond is with [Aunt], her great aunt and the petitioner.
>
> The fact that [Aunt] has no one to step in to care for the child should [Aunt] be incapacitated, as argued by parents, misses the inescapably sad point of this case -- [Child] is already a ***de facto*** orphan with respect to her biological parents and neither of them are capable of ever stepping into any breach that might occur. Frankly, we doubt [Child] would want them to and are more confident in her abilities to meet her needs. We will not cower in the murky shadow of this red herring. Clearly, the best interests of [Child] are served by this termination and the subsequent formal adoption by the only source of care and support she has ever known.

Trial court opinion, 5/27/15 at 2-3.

Here, our review of the record indicates there is competent evidence to support the trial court's decision that termination of Mother's parental rights best serves Child's developmental, physical, and emotional needs and welfare. Mother has failed to put herself in a position to develop a parental

bond with Child. While Mother seeks credit for "putting her child first" and "selflessly ensur[ing] her child was safe and stable" by allowing Aunt to have custody of Child, the trial court saw that differently. Simply stated, Mother allowed Aunt to raise her child while taking no part in Child's upbringing. Seeing Child a few times a year at family dinners and texting Child once or twice a month evinces Mother's abdication of a parental role in Child's life.

Moreover, the trial court found the Child is bonded with Aunt and wants to be adopted by her. As such, we find that it was appropriate for the trial court to determine that the termination of Mother's parental rights would not have a detrimental effect on Child and would be in Child's best interest. In consideration of these circumstances and our careful review of the record, we conclude that the trial court did not abuse its discretion or commit an error of law in finding competent evidence to support the termination of Mother's parental rights to Child under Section 2511(b).

Accordingly, for the reasons stated above, we affirm the trial court's order involuntarily terminating Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b).

J. A26001/15

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/5/2015